IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KEVIN RICHARD HOFFMAN,

                    Plaintiff,                                    OPINION AND ORDER

          v.                                                      26-cv-450-wmc

PASSAGES, INC., d/b/a ADA
JAMES PLACE, SHANNON ROBERTS,
MIRANDA MARTYNIUK, KAYLA COUNTS,
HARRISON SCHWICHTENBERG,
JOHN AND JANE DOES 1-10,

                    Defendants.

---

Plaintiff Kevin Richard Hoffman, who is representing himself while living in "HUD-funded transitional housing," has filed this lawsuit under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, alleging claims of: (1) retaliation for exercising his right to fair housing; (2) failure to accommodate his requests for an emotional support animal and a unit transfer; (3) a hostile housing environment due to harassment by another resident; and (4) a conspiracy to violate his rights under 42 U.S.C. § 1983. (Dkt. #1.) Plaintiff has also filed a motion for an *ex parte* temporary restraining order ("TRO") and entry of a preliminary injunction to prevent defendants from: (1) enforcing a "5-Day Notice with right to Cure" and initiating an eviction action against him; (2) retaliating or harassing him; and (3) denying him an emotional support animal. (Dkt. #2.) For the reasons set forth below, Hoffman's complaint will be dismissed with leave to amend, while his motion for a TRO and preliminary injunctive relief must be denied at this time.

ALLEGATIONS OF FACT[1]

Plaintiff Hoffman currently resides at Ada James Place, which he describes as a 16-unit transitional housing complex located in Richland Center, Wisconsin, operated by Passages, Inc., and subsidized by the U.S. Department of Housing and Urban Development ("HUD"). Defendant Shannon Roberts is the Executive Director and defendant Miranda Martyniuk is the Program Director for Ada James Place. Finally, defendant Kayla Counts is its Apartment Manager, while defendant Harrison Schwichtenberg is a resident who lives above plaintiff Hoffman's unit.

Hoffman moved into Ada James Place in October 2025. Shortly after, Executive Director Roberts allegedly called the police, claiming that Hoffman was "acting weird." Police searched Hoffman's unit for two hours but found nothing, then contacted Richland County Child Protective Services ("CPS"). Thereafter, Hoffman filed a civil rights lawsuit under 42 U.S.C. § 1983 against several CPS employees, claiming that he had been "coerced" into signing a "Protective Plan" after failing a drug test, and as a result, eventually lost custody of his minor son, J.H. *Hoffman v. Tisdale, et al.*, No. 26-cv-154-wmc (W.D. Wis.) (dkt. #1).

Hoffman next alleges that his primary care physician recommended an emotional support animal to remedy the "emotional distress" caused by losing custody of his son. While defendants Roberts and Counts initially agreed to his request for a support animal,

---

[1] In addressing any pro se litigant's complaint, the court must read the allegations generously, drawing all reasonable inferences and resolving ambiguities in plaintiff's favor. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). Unless otherwise indicated, the facts in this section are from plaintiff's verified complaint (dkt. #1) and are taken as true for purposes of this order.

Hoffman alleges they later verbally denied that request unless he provided a letter from his counselor.

Beginning in December 2025, defendant Schwichtenberg allegedly began making "fictitious noise complaints" against Hoffman for "normal television volume." When Hoffman confronted Schwichtenberg about one of his complaints on May 7, 2026, Schwichtenberg also complained to "management" that Hoffman was harassing him, which resulted in defendants Martyniuk and Counts issuing a "one-sided no-contact order" against Hoffman. Hoffman later allegedly observed Schwichtenberg watching him when he was outside at night or relaxing, prompting Hoffman to make his own complaint that Schwichtenberg was harassing him, but "management" took no steps to intervene.

Finally, due to his conflict with Schwichtenberg and another neighbor who lives across the hall (Kayla Burrow), Hoffman requested a unit transfer on May 11, 2026, but that request was denied by Program Director Martyniuk because no other units were available. The following day, Apartment Manager Counts issued Hoffman a "5-Day Notice with right to Cure," or he would be evicted for "noise disturbances," as well as some alleged "vehicle maintenance" that Hoffman conducted in the parking lot. Hoffman filed this federal lawsuit that same day.

## OPINION

### I. Plaintiff's Motion for a TRO and Preliminary Injunction

Plaintiff appears to seek an *ex parte* TRO to enjoin defendants from taking action on the 5-Day Notice issued on May 12, 2026, concerning alleged complaints made by other

residents.  A TRO is "an extraordinary and drastic remedy," *Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005), and may only be issued without notice to the opposing party or its attorney if "specific facts in an affidavit or a verified complaint *clearly* show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A) (emphasis added).  Plaintiff, who neither provides a copy of the 5-Day Notice nor any other documentation in support of his motion, has simply failed to meet his burden to show that a TRO is warranted.

To begin, the same day he received the 5-Day Notice, plaintiff acknowledges he challenged the complaints against him as "fictitious" in an attempt to cure any alleged violations, but had not yet received a response from staff before filing his federal complaint in this case.  To the contrary, plaintiff filed his federal complaint the same day he received the 5-Day Notice.  (Dkt. #1-1, ¶ 14.)  And apart from receiving this notice of his right to cure the alleged violations, plaintiff does not allege that eviction proceedings have even been initiated against him, much less alleged specific facts and provided supporting evidence of immediate, irreparable injury that will result before the adverse party can be heard.

In addition, for reasons discussed in more detail below, plaintiff has not established that he is likely to prevail on the merits of his claims, which is a separate prerequisite to preliminary injunctive relief.  *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020).  Nor has plaintiff otherwise complied with the court's procedures

that are required for motions seeking injunctive relief, which are readily available on the court's public website. For example, the movant is obligated to provide *actual and immediate notice* to the opposing party of the filing of the preliminary injunction motion, along with the date of any hearing that might be set. Further, the movant is required to establish the factual basis for a grant of relief by filing and serving: (a) a stipulation of those facts to which the parties agree; or (b) a statement of record facts proposed by the movant; or (c) a statement of those facts movant intends to prove at an evidentiary hearing; or (d) any combination of (a), (b), and (c). The movant is also required to present a "precisely tailored set of factual propositions" that are necessary to a decision in his favor, in numbered paragraphs with cites to the evidentiary source of each proposition.

To date, plaintiff has complied with none of these requirements. Although pro se litigants are entitled to liberal construction of their pleadings and some "leniency . . . on procedural matters[,]" *Otis v. Demarasse*, 886 F.3d 639, 644 (7th Cir. 2018), "it is also well established that pro se litigants are not excused from compliance with procedural rules." *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008). Still, should plaintiff believe that he can establish a likelihood of success on the merits of his claims, he may renew his motion for preliminary injunction, providing the required documentation is consistent with the requirements of this court, which are outlined above *and* separately attached to this order.

## II. Plaintiff's Claims

Because plaintiff seeks leave to proceed without prepayment of the filing fee, the court must also screen the complaint and dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).  When screening a complaint drafted by a non-lawyer, the court applies a less stringent standard.  *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).  However, plaintiff must still allege enough facts to show that he has a plausible claim for relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  In particular, Federal Rule of Civil Procedure 8(a) requires a "'short and plain statement of the claim' sufficient to notify the defendants of the allegations against them and enable them to file an answer."  *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006).  While this standard does not require detailed factual allegations, "naked assertions devoid of further factual enhancement" are not enough.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A. Retaliation

Here, plaintiff claims that the 5-Day Notice was issued in "retaliation," which would violate the FHA, 42 U.S.C. § 3617, because he received it "immediately after" filing a "HUD/FHEO housing discrimination complaint."  If a landlord retaliates against a tenant or prospective tenant for exercising their rights under 42 U.S.C. §§ 3603, 3604, 3605, or 3606, then the tenant may have a retaliation claim under the FHA.  *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 868 (7th Cir. 2018).  Success on such a claim depends on whether plaintiff shows that:  (1) he is a protected individual; (2) he has

6

engaged in the exercise of his fair housing rights; (3) defendants threatened, coerced, intimidated or interfered with plaintiff on account of his protected activity under the FHA; and (4) defendants were motivated by a desire to discriminate. *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009) (en banc).

Plaintiff does not allege facts showing that he is a member of a protected class for purposes of stating a claim under the FHA. *Hamilton v. Svatik*, 779 F.2d 383, 387 (7th Cir. 1985). Nevertheless, even assuming that he is, plaintiff does not allege sufficient facts in support of his assertion that the 5-Day Notice was issued in response to the exercise of his fair housing rights *or* that it was issued with an intent to discriminate. Specifically, although plaintiff alleges that he filed a housing discrimination complaint, he provides no details about: the substance of that complaint; the date it was filed; or with whom it was filed. Nor has he alleged facts otherwise permitting a reasonable inference that there was interference or an adverse outcome *caused* by a defendant in response to his housing discrimination complaint. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006); *Geraci v. Union Square Condo. Ass'n*, 891 F.3d 274, 277 (7th Cir. 2018). Because plaintiff has failed to allege sufficient facts in support of a retaliation claim, he may not proceed with such a claim.

### B. Failure to Accommodate

Plaintiff also alleges that defendants failed to accommodate him in violation of 42 U.S.C. § 3604(f) by denying his request for an emotional support animal and a unit transfer despite medical documentation and "disparate treatment of other residents." However, without medical documentation or allegations of specific facts showing that each

request was necessary to accommodate a "disability" as defined under the FHA, plaintiff has failed to state a viable claim. 42 U.S.C. § 3604(f)(3)(B); *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006). Likewise, other than pointing to one instance involving another resident who was allowed to have a dog, he alleges no facts showing or allowing a reasonable inference that plaintiff was intentionally treated differently from other residents who made similar requests for the accommodations he sought. *Kormoczy v. Sec'y, U.S. Dep't of Housing and Urban Dev.*, 53 F.3d 821, 823-24 (7th Cir. 1995) (disparate treatment requires a showing of intentional discrimination, provable by either direct or circumstantial evidence). Accordingly, the court will not grant plaintiff leave to proceed with a failure-to-accommodate claim under the FHA.

### C. Hostile Housing Environment

Plaintiff claims further that he has been subjected to a hostile housing environment because defendants failed to intervene after Schwichtenberg's alleged harassment. "A hostile-housing-environment claim requires a plaintiff to show that: (1) [he] endured unwelcome harassment based on a protected characteristic; (2) the harassment was severe or pervasive enough to interfere with the terms, conditions, or privileges of [his] residency, or in the provision of services or facilities; and (3) that there is a basis for imputing liability to the defendant." *Wetzel*, 901 F.3d at 861-62. However, again, the noise complaints made against plaintiff by Schwichtenberg and other quarrels involving his neighbors are *not* alleged to have involved a protected characteristic *and* are otherwise insufficient to establish a severe, pervasive pattern of harassment of the sort that states a hostile environment claim. *Id*. at 862 (citing *DiCenso v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir.

1996) and *Alamo v. Bliss*, 864 F.3d 541, 459-50 (7th Cir. 2017)).    Under these circumstances, the court will not grant plaintiff leave to proceed with a hostile-housing environment claim either.

### D. Conspiracy

Finally, Hoffman accuses all of the named defendants, together with "John/Jane Doe defendants," of conspiring to harass and retaliate against him in violation of 42 U.S.C. § 1983.  Section 1983 imposes liability on any "person" who, acting under color of state law, violates the Constitution or federal law.  *Knowlton v. City of Wauwatosa*, 119 F.4th 507, 519 (7th Cir. 2024).  Here, plaintiff does not allege facts showing that any defendant was acting under color of state law or qualifies as a state actor.  *See White v. Pagotto*, No. 22-3257, 2023 WL 4929306, at *2 (3d Cir. Aug. 2, 2023) (per curiam) (affirming the dismissal of § 1983 claims where plaintiff "made no allegations showing that the named defendant, Bethesda Project, Inc., [manager of a subsidized housing program where plaintiff lived] is a state actor").  For this reason, plaintiff may not proceed with a claim under § 1983 as well.

Because plaintiff has provided insufficient factual allegations in compliance with Fed. R. Civ. P. 8(a), his complaint must be dismissed.  However, the Seventh Circuit has cautioned against dismissing a pro se plaintiff's case without giving the plaintiff a chance to amend the complaint.  *Felton v. City of Chicago*, 827 F.3d 632, 636 (7th Cir. 2016).  Therefore, the court will grant plaintiff leave to file an amended complaint that addresses the referenced factual deficiencies described in detail above.  If plaintiff files an amended

complaint within the deadline set forth below, the court will again screen that complaint under 28 U.S.C. § 1915(e)(2)(B).

## ORDER

IT IS ORDERED that:

1) The complaint filed by plaintiff Kevin Richard Hoffman (dkt. #1) is DISMISSED without prejudice for failure to state a claim in compliance with Fed. R. Civ. P. 8(a).

2) **Plaintiff may have until June 22, 2026, in which to file an amended complaint setting forth in more detail the essential, factual allegations identified above, if he can do so in good faith.   If no amended complaint is received by this date, this action will be dismissed pursuant to Fed. R. Civ. P. 41(b) without further notice.**

3) Plaintiff's motion for a temporary restraining order and preliminary injunction (dkt. #2) is also DENIED without prejudice.

4) The clerk's office shall provide plaintiff with a copy of the court's procedures to be followed on motions for injunctive relief.

Entered this 22nd day of May, 2026.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge